## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT
## HARTFORD DIVISION

| | |
|---|---|
| In re: | Chapter 7 |
| The Good Foundation, Inc., | Case No. 25-21092 (JJT) |
| Debtor. | Re: ECF No. 9 |

## MEMORANDUM OF DECISION AND ORDER
## DENYING MOTION TO RECONSIDER CASE DISMISSAL

Before the Court is the Debtor's Motion to Reconsider Case Dismissal
(Motion, ECF No. 9). The Debtor filed its Chapter 7 petition on October 17, 2025.
Missing from the documents required to be filed with the petition were a list of
creditors, a statement of corporate ownership, and a corporate resolution
authorizing the bankruptcy filing. A deficiency notice was issued by the Clerk of the
Court (ECF No. 2), setting a deadline of October 22, 2025, for the Debtor to file the
missing documents. The Debtor did not timely file such documents, and the case
was dismissed on October 23, 2025. Four days later, the Debtor filed an alleged list
of creditors (ECF No. 7)[1] and the instant Motion. Attached to the Motion were
documents purporting to be the statement of corporate ownership and the corporate
resolution. Both were dated October 27, 2025. Neither was signed.[2]

The Court held a hearing on the Motion on November 6, 2025, after which

---

[1] The Debtor's sole listed creditor is the Town of Windham.
[2] The corporate resolution's postpetition dating alone means that there was no corporate authority to
file on the petition date. This is itself a fatal defect, rendering the entire filing null and void. *See In
re JJ Arch LLC*, 663 B.R. 258, 284 (Bankr. S.D.N.Y. 2024) (citing *Price v. Gurney*, 324 U.S. 100, 106
(1945)).

the Court afforded the Debtor time to file a supplemental brief and an affidavit of the Debtor's principal signaling his "willingness, intention, and ability to pay to: (1) secure an independent appraisal of the property by the Chapter 7 Trustee and (2) insure the underlying property for loss, damage, or casualty for at least 90 days, naming the Chapter 7 Trustee as an additional insured." (ECF No. 21). The Debtor filed the supplemental brief (ECF No. 20) and affidavit (ECF No. 24). The Court thereafter took the Motion under advisement. For the following reasons, the Motion is denied.

This bankruptcy case is rooted in a two-party dispute between the Debtor and the Town of Windham. In 2021, the Town filed a Notice of Cease and Desist Order and Lien of Fines related to blight at the Debtor's sole asset, a commercial property located at 85 Bridge Street, Willimantic, CT (Property).[3] After the fines went unpaid, the Town (through its Code and Zoning Enforcement Officer) filed a foreclosure action in the Connecticut Superior Court on August 9, 2021.[4] After the Debtor was defaulted for failure to appear, the Superior Court entered a judgment of foreclosure by sale on April 18, 2022. As part of this process, the Town advanced to that court an appraisal report for the Property, which appraised it at $75,000,

---

[3] Among the conditions of the Property cited in the Town's filings in the Superior Court were bulky waste, including mattresses, furniture, car parts, trash, and other debris, along with complaints that the Debtor had dumped raw sewage into the Willimantic River. The appraisal report relied on by the Superior Court also noted that a vehicle had collided with the building on the Property.

[4] The Court has taken judicial notice of the state court foreclosure action, *Vertefeuille v. The Good Foundation, Inc.*, No. WWM-CV-21-6022485-S (Conn. Super. Ct.). The Court also takes judicial notice of the citation issued by the Town, the street card, and photographs of the Property (including within the state court docket, street card, and Google Maps). All of the aforesaid were reviewed after notice to the Debtor, along with the representations made by Debtor's counsel at the November 6, 2025 hearing.

2

taking into account its manifest disrepair and the fact that the building, although zoned for commercial use, has two illegal residential dwelling units. The Superior Court found a debt to the Town of $59,390.04 and a fair market value of the Property of $75,000 and set a foreclosure auction sale date of July 23, 2022.

One day before the scheduled sale, the Debtor filed an appearance in the foreclosure case and requested that the foreclosure judgment be opened or that the sale date extended. The auction nonetheless proceeded, with the Town as the winning bidder.[5] The Debtor filed numerous motions in the Superior Court seeking to undo the sale, all to no avail.[6] Meanwhile, the Debtor's counsel was permitted to withdraw after the Debtor's principal began filing documents on behalf of the Debtor.[7] On September 19, 2022, the Court approved the sale and committee deed and denied the Debtor's various motions seeking to revisit issues previously addressed by the court.

Attorney Kenneth Beck, the Debtor's attorney in these bankruptcy proceedings, then belatedly appeared in the foreclosure action on September 28, 2022, and unavailingly filed a motion to reconsider, making many of the same arguments that the Superior Court had already rejected.[8] Eventually, the Debtor filed an appeal. The Appellate Court dismissed the appeal of the judgment of

---

[5] The Town credit bid $58,856.90 of the debt owed to it by the Debtor. The Superior Court docket notes other fees and costs associated with the foreclosure.

[6] Among the arguments made (and rejected) were a lack of notice, a supposed release by the Town, and conflicts of interest. All these motions were summarily denied.

[7] Philip Mann, the Debtor's principal, is not an attorney and is not otherwise authorized to practice law.

[8] Compare Docket Entry 143.00 on the state court docket (motion to reargue/reconsider) with Docket Entries 120.00 (motion to open and vacate judgment) and 120.10 (denying said motion).

foreclosure and affirmed the judgment in all other respects in a Memorandum

Decision on January 16, 2024.[9] *Vertefeuille v. The Good Foundation*, 223 Conn. App.

901 (2024).[10] After moving for reconsideration en banc, which was denied, the

Debtor filed a petition for certification with the Connecticut Supreme Court, which

was denied on April 9, 2024. *Vertefeuille v. The Good Foundation*, 349 Conn. 901

(2024). The Connecticut Supreme Court subsequently denied reconsideration.

The Debtor, through Attorney Beck, then filed an application to extend time

to file a petition for a writ of certiorari with the Supreme Court of the United States

on December 5, 2024. The Supreme Court extended the time to file to February 7,

2024.

Back in Superior Court, the Town moved for possession of the Property on

November 7, 2024, which would facilitate the eviction of the Debtor and Philip

Mann, the Debtor's principal, who lives there. The Superior Court, presumably in

deference to the U.S. Supreme Court, had noted that it would "withhold action on

the motion for possession" until at least February 2024, when a petition for

certiorari was to be filed with the Supreme Court. After no such petition appeared

on the Supreme Court's docket, the Town again asked the Superior Court for

possession of the Property on April 24, 2025. The Debtor then averred that Mann

(but not the Debtor) filed such a petition and that it was returned for resubmission,

supposedly to correct errors in the filing. In May 2025, without complete

---

[9] This Court also has taken judicial notice of the entire appellate court history of the foreclosure case.
[10] A Memorandum Decision by the Appellate Court has no reasoning explained and simply states the affirmed outcome of the case.

substantiation, the Debtor notified the Superior Court that the petition for certiorari had been refiled.

As of July 2025 (and through to this day), however, the petition for certiorari still has not been docketed by the Supreme Court. The Town had requested a status conference in the Superior Court on the matter. Prior to the status conference, the Debtor filed a notice stating that the Supreme Court had informed Mann that his petition was untimely. Before a status conference scheduled for October 20, 2025, could be had, however, the Debtor filed the instant bankruptcy case.[11]

At the November 6, 2025 hearing before this Court, the Debtor complained that the foreclosure was done without due process and constitutes a "taking" under the U.S. Constitution. Addressing the due process argument first, it was repeatedly rejected by all levels of the Connecticut state court system. Much of this argument is rooted in claimed service and notice defects, but upon a review of the state court docket, the return of service for the Complaint shows that Mann was served "in hand" at the Property. The Debtor's failure to timely appear or act after such service is not a due process violation.[12]

As for the "taking" argument,[13] the Debtor complains that the $75,000 valuation put forward by the Town and incorporated in the judgment of foreclosure

---

[11] Although the Debtor is a nonprofit corporation, implicating governmental interests, neither notice of the Chapter 7 bankruptcy filing nor the Motion nor the hearing related thereto have been given to the Connecticut Attorney General, the Department of Consumer Protection, or the Internal Revenue Service.

[12] Likewise, other pleadings are shown to have been delivered to him at the Property, at an address registered with the Secretary of the State, through counsel, or combinations of these methods.

[13] The taking issue is a legal issue which may be considered by the U.S. Supreme Court upon petition for certiorari in a case entitled *Pung v. Isabella County, Michigan*, No. 25-95.

by sale was simply out of sync with the Town's tax assessment appraisal of the Property, which was $120,740 at the time of the judgment in 2022.[14] There are two problems with this argument. First, because the property was tax exempt—as the Debtor is a nonprofit corporation—the Town's appraised value for tax purposes is not conclusive as to value because the Town would not necessarily be concerned with the current value of a property from which it derived no tax revenue. Second, in connection with the foreclosure judgment, the Superior Court, after notice to the Debtor and a hearing, found the value of the Property to be $75,000. This Court cannot second guess that finding. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) (prohibiting federal court review and rejection of final state court judgments under *Rooker–Feldman* doctrine).[15] Those findings have been validated in the affirmations of the foreclosure judgment through the state appellate courts. In neither the foreclosure nor the bankruptcy cases has the Debtor introduced other evidence from an independent expert on valuation to substantiate his contentions.

The Debtor's supplemental brief tries to dance around *Rooker–Feldman* by pretending that the parties here are not the same and by stating, without authority, that because the Debtor was defaulted in state court, it was denied its full and fair

---

[14] As noted above, the Court has taken judicial notice of the Town's street card for the Property. The Debtor cited the 2023 valuation of $138,980, but that value was determined after the judgment at issue. The Debtor's chief complaint with the $75,000 valuation is that it does not account for the apartments. But the Town's foreclosure appraisal did account for the apartments, noting that they were illegal in a commercial building, in coming to its value. Aside from illegal uses, the Property remains in significant disrepair and neglect and potentially threatens any occupants and the public.

[15] The doctrines of res judicata and collateral estoppel could also be raised as defenses, but the Town has not heretofore appeared in this case and thus has not raised them, and *Rooker–Feldman*, as a jurisdictional hurdle, must be addressed first.

6

opportunity to litigate. But the parties are the same. Moreover, the default entered by the Superior Court precluded the Debtor from asserting defenses to the foreclosure action.[16] Thus, despite being afforded process in the state court—which went ignored until after judgment entered—the Debtor wishes to proceed here, where its alleged sole known asset[17] would be this supposed unsubstantiated "taking" claim against the Town.

The Debtor also states that this Court's "[r]efusal to re-open this Chapter 7 [case] would likewise be a denial of due process and a taking." The Debtor cannot simply wave the wand of a due process claim—despite there being ample evidence of due process afforded to the Debtor in both this Court and the Superior Court, much of which the Debtor simply ignored—and expect magical outcomes. Moreover, to say that this Court is further effectuating a taking is pure nonsense.

After this Court's weighing of the $75,000 judicial valuation of the Property and accounting for the Town's debt, plus additional attorney fees, and the Committee's fees and expenses, the total consideration provided for the Property approximates the found value enough such that any arguments of a taking are dead on arrival.[18]

---

[16] "[T]he entry of a default operates as a confession by the defaulted defendant of the truth of the material facts alleged in the complaint which are essential to a judgment. Thus, the defaulted defendant is precluded from making any further defense to the action." *Costello v. Hartford Inst. of Acct., Inc.*, 193 Conn. 160, 162 n.1, 475 A.2d 310, 312 n.1 (1984). After the Debtor was defaulted, the Court then found that the value of the Property was $75,000, which led to the judgment of foreclosure by sale. All of this took place while the Debtor was on notice of the foreclosure case.
[17] At the November 6, 2025 hearing, Mann made inconsistent statements about whether the Debtor owned and should schedule any personal property. No cash held by the Debtor has been revealed earlier.
[18] Such also defeats any attempt to seek a new appraisal. Even if it did not, the Debtor's offer to pay for an appraisal and insurance "over time" is not sufficient. The Court will not burden the Chapter 7

In making the above findings, the Court has had to review the Debtor's submissions and arguments here and the history of the Debtor's tour from the Superior Court to the U.S. Supreme Court. In its review of that record, the Court finds that there is ample evidence for this Court to reasonably infer and conclude that this bankruptcy case was filed in bad faith and that the Debtor's conduct is part of a pattern of manifestly dilatory tactics. The Superior Court's record of adequate notice to the Debtor, the Debtor's demonstrable lack of diligence or credibility with regard to notice of the foreclosure, the repetitive arguments, and the last-minute pleas are insufficient to satisfy the Debtor's burden under Rule 60 of the Federal Rules of Civil Procedure for relief from the dismissal order.[19] Besides those factors discussed above, the Court has also considered that:

- A review of the records of the Secretary of the State reveals that the

---

Trustee with administration of this estate with no resources to pursue quixotic visions and endeavor to manage (without insurance or cash) a Property that remains a potential public nuisance and danger.

[19] The Federal Rules of Bankruptcy Procedure do not provide for a motion to reconsider. Instead what the Debtor seeks is relief from a judgment or order, here, the dismissal order. Under Rule 60(b) of the Federal Rules of Civil Procedure, as applied by Rule 9024 of the Federal Rules of Civil Procedure, "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding" for various enumerated reasons. The Debtor cites none of these reasons in the Motion, merely stating that noted deficiencies were cured (even though they were not). The Court cannot accept the Debtor's failure to file a corporate resolution properly executed prepetition as mistake or excusable neglect under Rule 60(b)(1) because a corporate resolution is a necessity for a corporation to file for bankruptcy protection. *State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 177 (2d Cir. 2004) ("where a party fails to act with diligence, he will be unable to demonstrate that his conduct constituted 'excusable neglect'"). Nor does the catch-all provision of Rule 60(b)(6) for "any other reasons that justifies relief" apply to the reasons cited in the Motion because "Rule 60(b)(1) and Rule 60(b)(6) are mutually exclusive, such that any conduct which generally falls under the former cannot stand as a ground for relief under the latter." *Mandala v. NTT Data, Inc.*, 88 F.4th 353, 359 (2d Cir. 2023). The Court, however, has assumed without deciding that the Debtor's arguments made at the November 6, 2025 hearing and subsequent filings fall under subsection (b)(6), but has separately determined that such cannot constitute suitable cause to justify reopening this case because such arguments are hopelessly flawed in the ways discussed throughout this Memorandum of Decision.

Debtor is a dissolved corporation, and that state law mandates the winding up of a dissolved nonprofit corporation. *See* Conn. Gen. Stat. § 33-1182(a) ("A corporation administratively dissolved continues its corporate existence but may not carry on any activities except those necessary to wind up and liquidate its activities and affairs . . . and notify claimants[.]").[20]

- The bankruptcy case is founded on a two-party dispute, with the other party (the Town) constituting the only named creditor of the Debtor. *See In re Mt. Dairies, Inc.*, 372 B.R. 623, 634–35 (Bankr. S.D.N.Y. 2007) (noting that court would be required to abstain "because this is essentially a two-party dispute for which the parties have adequate remedies in state court") (footnote omitted).

In short, this case should have never been filed. Instead, on the eve of having to finally admit to the Superior Court that no petition for certiorari was pending with the U.S. Supreme Court, the bankruptcy petition was filed. The Debtor's bald and belated assertions of an actionable "taking" claim do not necessarily turn on whether the Town proceeds to secure possession of the Property.[21] The bankruptcy filing has only served the purpose of preventing Mann from being evicted from his

---

[20] What is perhaps more perplexing is that the Debtor filed under Chapter 7, which invariably would result in the Debtor's liquidation and dissolution. A liquidation under state law would not necessarily result in any amounts redounding to Mann. *See* Conn. Gen. Stat. § 33-1176(a) (listing order or distribution of assets of a nonstock corporation).

[21] The Court further notes that if the alleged "taking" claim is not already precluded by findings in the foreclosure action, nothing precludes its bona fide assertion by the Debtor in state or federal court accompanied by a claim for injunctive relief. Such constitutional claims for relief are better suited for other forums, which would augur in favor of this Court abstaining from deciding them.

illegal occupancy of the Property. Mann is not the Debtor, and this Court will not be a vehicle to facilitate a violation of municipal zoning and health and safety laws.[22]

Although the Debtor's "bad faith" seems apparent from this record and the hearing, the Court, however, will afford the Debtor a further opportunity to rebut its findings of "bad faith." The Debtor will have an additional 10 days after the docketing of this Order to file a brief, not to exceed 10 pages, along with an affidavit of Mann, addressing why this Court should not consequently bar the Debtor from the refiling for bankruptcy protection in any district for a period of 180 days. *See In re Casse*, 219 B.R. 657, 662 (Bankr. E.D.N.Y. 1998); *see also* 11 U.S.C. §§ 105(a) and 349(a). If no brief or affidavit is filed, such 180-bar will remain in full force and effect without further notice or hearing.[23] If a brief and affidavit are filed, the Court will consider whether the Debtor's written arguments justify modification of this Order.

Accordingly, it is hereby

ORDERED: The Motion is DENIED with prejudice; and it is further

ORDERED: The dismissal of this Chapter 7 case shall remain in full force and effect; and it is further

ORDERED: The Debtor may file a brief and affidavit of Philip Mann by December 12, 2025, at 4:00 p.m., prevailing Eastern time, arguing why the Debtor

---

[22] Moreover, and as noted above, this estate has no resources. Mann's offer to pay for a new appraisal and insurance "over time" instead of immediately would leave the Trustee burdened to investigate a dubious "taking" claim and potentially managing a deteriorated and illegally occupied Property.
[23] The Court admonishes Mann on his unauthorized practice of law as he is not an attorney and may not file a brief pro se on behalf of a corporate Debtor.

10

should not be barred from refiling for bankruptcy protection in this or any other district for a period of 180 days of the date of this Order; and it is further

ORDERED: There will be no extensions granted for the filing of the brief and affidavit; and it is further

ORDERED: If the Debtor does not timely file the brief and affidavit, the Debtor shall remain barred from filing for bankruptcy protection in this or any other district for a period of 180 days from the date of this Order; and it is further

ORDERED: If the Debtor does timely file the brief and affidavit, the Court will further consider the arguments therein as to whether, and to what extent, this Order should be modified; and it is further

ORDERED: A copy of this Order shall be mailed by the Clerk of the Court, first class mail, to (1) Matthew Vertefeuille, Director, Code and Zoning Enforcement Officer, Town of Windham c/o Suisman Shapiro Attorneys-at-Law, P.O. Box 1591, New London, CT 06320; (2) William Tong, Connecticut Attorney General, 165 Capital Avenue, Hartford, CT 06106; (3) Bryan T. Cafferelli, Commissioner of the Connecticut Department of Consumer Protection, 450 Columbus Boulevard, Suite 901, Hartford, CT 06103; and (4) the Internal Revenue Service, c/o David X. Sullivan, United States Attorney for the District of Connecticut, 157 Church Street, Floor 25, New Haven, CT 06510.

Dated: December 2, 2025
Hartford, Connecticut

*James J. Tancredi*
United States Bankruptcy Judge
District of Connecticut